## In re ATTORNEYS AT LAW AND DEBT RELIEF AGENCIES.

United States Bankruptcy Court,
S.D. Georgia.

Oct. 17, 2005.

## ORDER

LAMAR W. DAVIS, JR., Chief Judge.

The issue before the Court is whether amendments to the Bankruptcy Code, which become effective today, regulating Debt Relief Agencies apply to attorneys licensed to practice law who are members of the Bar of this Court.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPC-PA") established new and significant restrictions on the activities of debt relief agencies. 11 U.S.C. §§ 526, 527 and 528. They require "debt relief agencies" who render "bankruptcy assistance" to enter written contracts with "assisted persons," disclose the extent of services provided and fees charged, and disclose clearly and conspicuously in all advertising that their services contemplate bankruptcy. § 528. They are required to provide a detailed written notice to all "assisted persons" of the disclosure requirements of the Code, the obligation of accuracy and truthfulness on those disclosures, and that failure to comply with those requirements carry potential civil and criminal sanctions. § 527. They are required to advise the "assisted person" that the person may proceed *pro se*, or may hire an attorney, or may hire a bankruptcy petition preparer, and that only attorneys and not petition preparers can render legal advice. *Id.* They are required to provide the "assisted person" with information on how to value assets, how to complete bankruptcy schedules, and how to determine what property is exempt. *Id.* Debt relief agencies are prohibited from failing to provide the services they contracted to provide, counseling any person to make false statements, or advis-ing the person "to incur more debt in contemplation of such person filing a case under this title *or to pay an attorney* or bankruptcy petition preparer ...." § 526(a)(4) (emphasis added).

Section 526(c) creates civil liability for violation of the duties enumerated. It also grants to the Court the right "on its own motion" or that of the United States Trustee or a debtor to enjoin violations or impose civil remedies. This grant complements the inherent authority of a Court to regulate the practice of the members of its Bar, as embodied in this District in Southern District Local Rules 83, 83.5 and Local Bankruptcy Rule 2090.

Debt relief agencies are defined as follows in § 101(12A):

> [A]ny person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer under section 110 ....

Bankruptcy assistance is defined as follows in § 101(4A):

> [A]ny goods or services sold or otherwise provided to an assisted person with the express or implied purpose of providing information, advice, counsel, document preparation, or filing, or attendance at a creditors' meeting or appearing in a case or proceeding on behalf of another or providing legal representation with respect to a case or proceeding under this title.

Although attorneys are not expressly included in the definition, the language defining debt relief agencies is broad enough on its face to include attorneys and the reference to "providing legal representation" in § 101(4A) suggests that attorneys are covered.

Indeed during the months since passage of BAPCA, considerable analysis of all its

provisions has been undertaken by the academic and legal community to educate the public, attorneys, and the judiciary of its content, scope and meaning. Commentary relating to these provisions appear to assume or at least raise the specter that beginning October 17, 2005, attorneys will come within the scope of §§ 101(12A), 526, 527, and 528. *See* HON. WILLIAM HOUSTON BROWN AND LAWRENCE R. AHERN, III, 2005 BANKRUPTCY REFORM LEGISLATION WITH ANALYSIS, p.58 (Thomson/West 2005); Erwin Chemerinsky, *Constitutional Issues Posed in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, 79 AM. BANKR. L.J. 571, 576 (2005) ("A lawyer who provides any bankruptcy assistance to an 'assisted person' is defined to be a 'debt relief agency.'"); Coastal Bankruptcy Law Institute Seminar Materials (September 23, 2005) at Tab 4, pg. 2; Hon. Keith M. Lundin, *Ten Principles of BAPCPA: Not What was Advertised*, 24 AM. BANKR. INST. J. 1, 69 (Sept.2005) (BAPCPA "de-professionalizes bankruptcy attorneys as 'debt relief agencies.'"); Samuel Gerdano, *25 Changes to Personal Bankruptcy Law*, at ¶ 19, *http://www.abiworld. net/bankbill/changes.html* ("Attorneys as Debt Relief Agencies"). In the words of one bankruptcy scholar:

> More confusing, if not simply absurd, are the provisions setting out requirements for "debt relief agencies." These provisions, due to slipshod drafting, will apply to many attorneys who rarely, or never, represent consumer bankruptcy debtors . . .
>
> [The definition of "debt relief agency"] clearly includes attorneys who represent individual landlords or other mom and pop businesses that owe primarily consumer debts, as well as those who represent consumer creditors, or nondebtor spouses who are creditors in title 11 cases, including Chapter 11 cases. Because "person" is defined to include partnership and corporations, presumably the entire law firm is a debt relief agency.

Henry J. Sommer, *Trying to Make Sense Out of Nonsense: Representing Consumers Under the "Bankruptcy Abuse Prevention and Consumer Protection Act of 2005"*, 79 AM. BANKR. L.J. 191, 206–07 (Spring 2005). If these commentators are correct, a new layer of regulation will be superimposed on the bar of this Court, and evaluation of new risks and liabilities will preoccupy them as they strive to represent their clients, comply with existing state regulation of their practice, learn the new substantive and procedural mandates of this new law, and adhere to the separate professional standards applicable to members of the Bar of this Court. *See* Local Rule 83.5(d). That is a burden which should not be borne by the Bar needlessly or merely out of an abundance of caution. It should and must be borne by the Bar if that is the result Congress mandated. Anything less than the highest level of professional conduct is not tolerable in this Court. Equally intolerable is needless uncertainty in the minds of the Bar as to their duty under this new statute.

 Are the members of the Bar of this Court "debt relief agencies?" Exercising the grant of authority of 11 U.S.C. §§ 526(c) [1] and 105 and the inherent power of this Court, I conclude that they are not.

---

1. Section 526(c)(5) authorizes the Court *on its own motion* to enjoin violations of the debt relief agency provisions or impose civil penalties on the violator. If the Court has that broad jurisdiction to both initiate a disciplinary action *and* punish a violation, it must of necessity have jurisdiction on it own motion to conclude that certain types of persons or certain types of activity are not covered at all, since the first step in enforcing the provision is to determine whom is encompassed within its grasp.

1) The § 101(12A) definition of "debt relief agency," while extremely broad does not include the word "attorney" or "lawyer." It does include "bankruptcy petition preparer," but that term is defined in § 110 and expressly *excludes* attorneys and their staffs. "Attorney" is separately defined in § 101(4), which makes no reference to debt relief agencies or to subsection (12A). Clearly as a matter of plain language, "attorney" and "debt relief agency" are not synonymous nor do they in common understanding include each other. When construing a statute, the ordinary meaning should be read into terms unless a special statutory definition controls. *See American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 71 L.E[d].2d 748 (1982) ("As in all cases involving statutory construction, our starting point must be the language employed by Congress, and we assume that the legislative purpose is expressed by the ordinary meaning of the words used. Thus absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.") (citations omitted). Because the definition of "debt relief agency" omits express reference to attorneys and includes a term which excludes attorneys, it is difficult to imagine that Congress meant otherwise. Even though the definition of debt relief agency is facially broad enough to cover bankruptcy petition preparers *and* attorneys, it is instructive that Congress saw the necessity of expressly including "bankruptcy petition preparers" (who clearly provide "bankruptcy assistance") in the definition of debt relief agency, yet omitted any express inclusion of attorneys.

It is true that to be a debt relief agency an entity must provide "bankruptcy assistance," which may include "providing legal representation." § 101(4A). The inclusion of "legal representation" in the scope of what a debt relief agency does certainly suggests a contrary result to that which I reach, but it is well-known that non-lawyers often attempt to provide "legal representation," often to poorer, less educated, and more vulnerable citizens. To do so constitutes unauthorized practice of law and may include misdemeanor penalties under state law. O.C.G.A. § 15–19–56. However, the likelihood of effective enforcement of those remedies by the organized bar varies from state to state, is restricted by limited availability of resources, and often cannot occur in a time-sensitive period so as to protect the consumer. I conclude that the inclusion of the term "legal representation" in the definition of "bankruptcy assistance" was Congress's effort to empower the Bankruptcy Courts presiding over a case with authority to protect consumers who are before the Court, who may have been harmed by a debt relief agency that may have engaged in the unauthorized practice of law, and whose existing remedies for any damage is more theoretical than real.[2]

2) Section 527(b) requires debt relief agencies to inform assisted persons that they have the right to hire an

---

**2.** Indeed many such agencies, unlike attorneys admitted to the Bar, may be located outside the geographical limits of the state in which their services are delivered and where their assisted persons are in Court, making the state enforcement practically, if not legally, impossible. Bankruptcy Courts on the other hand have nationwide service powers in cases pending before them. Fed. R. Bankr.P. 7004(e), (h).

attorney or to represent themselves, that only an attorney can render legal advice, and how to perform services *pro se* that would be universally provided if the person hired an attorney. It is hard to imagine that the language which, again, conspicuously omits the word "attorney" really *requires* an attorney to tell an assisted person that he/she has the right to hire an attorney or how to prepare the documents *pro se* that the attorney is poised to prepare on that person's behalf. It is far more likely that the provision is a consumer protection provision intended to regulate that universe of entities who assist persons but are *not* attorneys.[3] I hold that Congress intended to establish regulation of entities who interface with debtors in shadowy, gray areas not already covered by bankruptcy petition preparer regulations and to bolster the existing regulation of bankruptcy petition preparers, but it did not intend to regulate attorneys. The interpretation of a statute that is logical or sensible is preferred over interpretation that is illogical or absurd. *United States v. Katz*, 271 U.S. 354, 357, 46 S.Ct. 513, 70 L.E[d]. 986 (1926) ("All laws are to be given a sensible construction; and a literal application of a statute, which would lead to absurd consequences, should be avoided whenever a reasonable application can be given to it, consistent with the legislative purpose.").

3. Section 526(d)(2) makes it clear that there is no effort to curtail the states' role in enforcing "qualifications for the practice of law." Aside from this section, the 2005 Act is silent as to whether it is intended to pre-empt or curtail other state interests in regulating and disciplining attorneys' conduct. Attorneys' admission and discipline is historically a matter of state law. *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1066, 115[111] S.Ct. 2720, 116[115] L.E[d].2d 888 (1991). *See also Arons v. New Jersey State Board of Education*, 842 F.2d 58, 63 (3d Cir. 1988):

As the Supreme Court recognized, the States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions.

In the absence of explicit provisions, we are not convinced that Congress intended to limit the states' traditional control over the practice of law. Nothing in the statutory language demonstrates a congressional desire to supercede the states' authority to regulate the legal profession. We, too, decline to "rewrite the statute." (citations and quotations omitted).

*White v. Medical Review Consultants*, 831 S.W.2d 662, 664 (Mo.Ct.App.1992):

---

**3.** I hesitate to speculate on all the types of persons or entities which might render bankruptcy assistance to a debtor which are not attorneys, but websites containing information, forms, and instructions exist. *Compare* www.afordablebankruptcy.com ("Free Consumer Bankruptcy Information"), *with* www.bankruptcyez.com (which "allow[s] you to complete your documents online and print from the comfort of your own home") *and* www.debtoraid.com (offering "complete professional preparation" and "The best way to prepare your bankruptcy is to have it done **full service** for you. **NOT online software!!!**") The first appears to be a debt relief agency, the last a bankruptcy petition preparer, and the second might be either one.

Preemption is not to be lightly presumed. Moreover, when Congress legislates in a field traditionally occupied by the states, a preemption review starts with the assumption that the historic police powers of the states were not be preempted unless that was the clear and manifest purpose of Congress. Regulation of the Bar is an historic police power of the States. (citations omitted).

It would be a breathtakingly expansive interpretation of federal law to usurp state regulation of the practice of law via the ambiguous provisions of this Act, which in no clear fashion lay claim to the right to do any such thing. It could possibly violate the Tenth Amendment to the Constitution as well.[4] I cannot conceive that as long as this bill has been pending any such intent could have gone unnoticed and undebated by the states. Nor can I conceive that Congress would ever take such an astounding step toward the federal regulation of professionals without forthrightly and expressly stating its intent.

Finally, I will conclude by revisiting the concurring opinion of Justice Scalia who stated that when Congress used the term "applicable non-bankruptcy law" it meant something more expansive than merely "state law." Indeed, he observed that when Congress meant "state law" it used the phrase "state law."

> When the phrase "applicable nonbankruptcy law" is considered in isolation, the phenomenon that three Courts of Appeals could have thought it a synonym for "state law" is mystifying. When the phrase is considered together with the rest of the Bankruptcy Code (in which Congress chose to refer to state

law as, logically enough, "state law"), the phenomenon calls into question whether our legal culture has so far departed from attention to text, or is so lacking in agreed-upon methodology for creating and interpreting text, that it any longer makes sense to talk of "a government of laws, not of men."

*Patterson v. Shumate,* 504 U.S. 753, 766, 112 S.Ct. 2242, 2250–51, 119 L.Ed.2d 519 (1992).

In a similar vein, I believe that if Congress meant to ensnare attorneys in the thicket of §§ 526, 527 and 528, it would have used the term "attorney" and not "debt relief agency."

For the foregoing reasons, I rule that attorneys regularly admitted to the Bar of this Court or those admitted *pro hac vice* are not covered by the provisions of the Code regulating debt relief agencies, including without limitation §§ 101(12A), (4A), 526, 527 and 528, and are excused from compliance with any of those requirements or provisions, so long as their activities fall within the scope of the practice of law and do not constitute a separate commercial enterprise.

FURTHER ORDERED that attorneys appearing in this Court be reminded that maintaining the tradition of professional conduct remains of paramount concern to this Court.[5]

---

4. *But see* Chemerinsky, *supra* page 68, at 582–83.

5. In this regard it should be noted that some of the provisions of §§ 526, 527 and 528 may mirror the type of "best practices" that attor-

neys should follow and may be consistent with attorneys' pre-existing professional standards. The point is that attorneys are bound by those professional standards and are unaffected by any new or different requirements that are found in §§ 526, 527 and 528.