(Slip Opinion) OCTOBER TERM, 2009 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MILAVETZ, GALLOP & MILAVETZ, P. A., ET AL. *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 08–1119. Argued December 1, 2009—Decided March 8, 2010*

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) amended the Bankruptcy Code to define a class of bankruptcy professionals termed "debt relief agenc[ies]." 11 U. S. C. §101(12A). That class includes, with limited exceptions, "any person who provides any bankruptcy assistance to an assisted person . . . for . . . payment . . . , or who is a bankruptcy petition preparer." *Ibid.* The BAPCPA prohibits such professionals from "advis[ing] an assisted person . . . to incur more debt in contemplation of [filing for bankruptcy] . . . ." §526(a)(4). It also requires them to disclose in their advertisements for certain services that the services are with respect to or may involve bankruptcy relief, §§528(a)(3), (b)(2)(A), and to identify themselves as debt relief agencies, §§528(a)(4), (b)(2)(B).

The plaintiffs in this litigation—a law firm and others (collectively Milavetz)—filed a preenforcement suit seeking declaratory relief, arguing that Milavetz is not bound by the BAPCPA's debt-relief-agency provisions and therefore can freely advise clients to incur additional debt and need not make the requisite disclosures in its advertisements. The District Court found that "debt relief agency" does not include attorneys and that §§526 and 528 are unconstitutional as applied to that class of professionals. The Eighth Circuit affirmed in part and reversed in part, rejecting the District Court's conclusion that attorneys are not "debt relief agenc[ies]"; upholding application of §528's disclosure requirements to attorneys; and finding §526(a)(4) unconstitutional because it broadly prohibits debt relief agencies

——————

*Together with No. 08–1225, *United States* v. *Milavetz, Gallop & Milavetz, P. A., et al.,* also on certiorari to the same court.

from advising assisted persons to incur *any* additional debt in con-
templation of bankruptcy even when the advice constitutes prudent
prebankruptcy planning.

*Held:*

  1. Attorneys who provide bankruptcy assistance to assisted persons
are debt relief agencies under the BAPCPA.  By definition, "bank-
ruptcy assistance" includes several services commonly performed by
attorneys, *e.g.,* providing "advice, counsel, [or] document prepara-
tion," §101(4A).  Moreover, in enumerating specific exceptions to the
debt-relief-agency definition, Congress indicated no intent to exclude
attorneys.  See §§101(12A)(A)–(E).  Milavetz relies on the fact that
§101(12A) does not expressly include attorneys in advocating a nar-
rower understanding.  On that reading, only a bankruptcy petition
preparer would qualify—an implausibility given that a "debt relief
agency" is "any person who provides any bankruptcy assistance . . . or
who is a bankruptcy petition preparer," *ibid.*  Milavetz's other argu-
ments for excluding attorneys are also unpersuasive.  Pp. 5–9.

  2. Section 526(a)(4) prohibits a debt relief agency only from advis-
ing a debtor to incur more debt because the debtor is filing for bank-
ruptcy, rather than for a valid purpose.  The statute's language, to-
gether with its purpose, makes a narrow reading of §526(a)(4) the
natural one.  *Conrad, Rubin & Lesser* v. *Pender*, 289 U. S. 472, sup-
ports this conclusion.  The Court in that case read now-repealed
§96(d), which authorized reexamination of a debtor's attorney's fees
payment "in contemplation of the filing of a petition," to require that
the portended bankruptcy have "induce[d]" the transfer at issue, *id.,*
at 477, understanding inducement to engender suspicion of abuse.
The Court identified the "controlling question" as "whether the
thought of bankruptcy was the impelling cause of the transaction,"
*ibid.*   Given the substantial similarities between §§96(d) and
526(a)(4), the controlling question under the latter is likewise
whether the impelling reason for "advis[ing] an assisted person . . . to
incur more debt" was the prospect of filing for bankruptcy.  In prac-
tice, advice impelled by the prospect of filing will generally consist of
advice to "load up" on debt with the expectation of obtaining its dis-
charge.   The statutory context supports the conclusion that
§526(a)(4)'s prohibition primarily targets this type of conduct.  The
Court rejects Milavetz's arguments for a more expansive view of
§526(a)(4) and its claim that the provision, narrowly construed, is
impermissibly vague.  Pp. 9–18.

  3. Section 528's disclosure requirements are valid as applied to Mi-
lavetz.  Consistent with Milavetz's characterization, the Court pre-
sumes that this is an as-applied challenge.  Because §528 is directed
at misleading commercial speech and imposes only a disclosure re-

Syllabus

quirement rather than an affirmative limitation on speech, the less exacting scrutiny set out in *Zauderer* v. *Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U. S. 626, governs. There, the Court found that, while unjustified or unduly burdensome disclosure requirements offend the First Amendment, "an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers." *Id.,* at 651. Section 528's requirements share the essential features of the rule challenged in *Zauderer*. The disclosures are intended to combat the problem of inherently misleading commercial advertisements, and they entail only an accurate statement of the advertiser's legal status and the character of the assistance provided. Moreover, they do not prevent debt relief agencies from conveying any additional information through their advertisements. *In re R. M. J.*, 455 U. S. 191, distinguished. Because §528's requirements are "reasonably related" to the Government's interest in preventing consumer deception, the Court upholds those provisions as applied to Milavetz. Pp. 18–23.

541 F. 3d 785, affirmed in part, reversed in part, and remanded.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, KENNEDY, GINSBURG, BREYER, and ALITO, JJ., joined, in which SCALIA, J., joined except for n. 3, and in which THOMAS, J., joined except for Part III–C. SCALIA, J., and THOMAS, J., filed opinions concurring in part and concurring in the judgment.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

Nos. 08–1119 and 08–1225

MILAVETZ, GALLOP & MILAVETZ, P. A., ET AL.,
PETITIONERS
08–1119          *v.*
UNITED STATES

UNITED STATES, PETITIONER
08–1225          *v.*
MILAVETZ, GALLOP & MILAVETZ, P. A., ET AL.

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT

[March 8, 2010]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA or Act) to correct perceived abuses of the bankruptcy system. Among the reform measures the Act implemented are a number of provisions that regulate the conduct of "debt relief agenc[ies]"—*i.e.*, professionals who provide bankruptcy assistance to consumer debtors. See 11 U. S. C. §§101(3), (12A). These consolidated cases present the threshold question whether attorneys are debt relief agencies when they provide qualifying services. Because we agree with the Court of Appeals that they are, we must also consider whether the Act's provisions governing debt relief agencies' advice to clients, §526(a)(4), and requiring them to make certain disclosures in their advertisements,

§§528(a) and (b)(2), violate the First Amendment rights of
attorneys. Concluding that the Court of Appeals con-
strued §526(a)(4) too expansively, we reverse its judgment
that the provision is unconstitutionally overbroad. Like
the Court of Appeals, we uphold §528's disclosure re-
quirements as applied in these consolidated cases.

## I

In order to improve bankruptcy law and practice, Con-
gress enacted through the BAPCPA a number of provi-
sions directed at the conduct of bankruptcy professionals.
Some of these measures apply to the broad class of bank-
ruptcy professionals termed "debt relief agenc[ies]." That
category includes, with limited exceptions, "any person
who provides any bankruptcy assistance to an assisted
person in return for . . . payment . . . , or who is a bank-
ruptcy petition preparer." §101(12A).[1] "Bankruptcy assis-
tance" refers to goods or services "provided to an assisted
person with the express or implied purpose of providing
information, advice, counsel, document preparation, or
filing, or attendance at a creditors' meeting or appearing
in a case or proceeding on behalf of another or providing
legal representation with respect to a case or proceeding"
in bankruptcy. §101(4A). An "assisted person" is someone
with limited nonexempt property whose debts consist
primarily of consumer debts. §101(3). The BAPCPA
subjects debt relief agencies to a number of restrictions
and requirements, as set forth in §§526, 527, and 528. As

---

[1] Congress excluded from the definition of "debt relief agency" any
"officer, director, employee, or agent of a person who provides [bank-
ruptcy] assistance"; any "nonprofit organization that is exempt from
taxation under section 501(c)(3) of the Internal Revenue Code of 1986";
"a creditor of [an] assisted person" who is helping that person "to
restructure any debt owed . . . to the creditor"; "a depository institu-
tion"; or "an author, publisher, distributor, or seller of works subject to
copyright protection under title 17, when acting in such capacity."
§§101(12A)(A)–(E).

relevant here, §526(a) establishes several rules of professional conduct for persons qualifying as debt relief agencies. Among them, §526(a)(4) states that a debt relief agency shall not "advise an assisted person . . . to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer fee or charge for services performed as part of preparing for or representing a debtor in a case under this title."

Section 528 requires qualifying professionals to include certain disclosures in their advertisements. Subsection (a) provides that debt relief agencies must "clearly and conspicuously disclose in any advertisement of bankruptcy assistance services or of the benefits of bankruptcy directed to the general public . . . that the services or benefits are with respect to bankruptcy relief under this title." §528(a)(3). It also requires them to include the following, "or a substantially similar statement": "We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code." §528(a)(4). Subsection (b) requires essentially the same disclosures in advertisements "indicating that the debt relief agency provides assistance with respect to credit defaults, mortgage foreclosures, eviction proceedings, excessive debt, debt collection pressure, or inability to pay any consumer debt." §528(b)(2). Debt relief agencies advertising such services must disclose "that the assistance may involve bankruptcy relief," §528(b)(2)(A), and must identify themselves as "debt relief agenc[ies]" as required by §528(a)(4), see §528(b)(2)(B).

## II

The plaintiffs in this litigation—the law firm Milavetz, Gallop & Milavetz, P. A.; the firm's president, Robert J. Milavetz; a bankruptcy attorney at the firm, Barbara Nilva Nevin; and two of the firm's clients (collectively

Milavetz)—filed a preenforcement suit in Federal District Court seeking declaratory relief with respect to the Act's debt-relief-agency provisions. Milavetz asked the court to hold that it is not bound by these provisions and thus may freely advise clients to incur additional debt and need not identify itself as a debt relief agency in its advertisements.

Milavetz first argued that attorneys are not "debt relief agenc[ies]" as that term is used in the BAPCPA. In the alternative, Milavetz sought a judgment that §§526(a)(4) and 528(a)(4) and (b)(2) are unconstitutional as applied to attorneys. The District Court agreed with Milavetz that the term "debt relief agency" does not include attorneys, App. to Pet. for Cert. in No. 08–1119, p. A–15, but only after finding that §§526 and 528—provisions expressly applicable only to debt relief agencies—are unconstitutional as applied to this class of professionals.

The Court of Appeals for the Eighth Circuit affirmed in part and reversed in part. 541 F. 3d 785 (2008). Relying on the Act's plain language, the court unanimously rejected the District Court's conclusion that attorneys are not "debt relief agenc[ies]" within the meaning of the Act. The Court of Appeals also parted ways with the District Court concerning the constitutionality of §528. Concluding that the disclosures are intended to prevent consumer deception and are "reasonably related" to that interest, the court upheld the application of §528's disclosure requirements to attorneys. *Id.*, at 796–797 (citing *Zauderer* v. *Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U. S. 626, 651 (1985)).

A majority of the Eighth Circuit panel, however, agreed with the District Court that §526(a)(4) is invalid. Determining that §526(a)(4) "broadly prohibits a debt relief agency from advising an assisted person . . . to incur *any* additional debt when the assisted person is contemplating bankruptcy," even when that advice constitutes prudent prebankruptcy planning not intended to abuse the bank-

ruptcy laws, 541 F. 3d, at 793, the majority held that §526(a)(4) could not withstand either strict or intermediate scrutiny. In dissent, Judge Colloton argued that §526(a)(4) should be read narrowly to prevent only advice to abuse the bankruptcy system, noting that this construction would avoid most constitutional difficulties. See *id.*, at 799 (opinion concurring in part and dissenting in part).

In light of a conflict among the Courts of Appeals,[2] we granted certiorari to resolve the question of §526(a)(4)'s scope. 556 U. S. \_\_\_ (2009). We also agreed to consider the threshold question whether attorneys who provide bankruptcy assistance to assisted persons are "debt relief agenc[ies]" within the meaning of §101(12A) and the related question whether §528's disclosure requirements are constitutional.

## III

### A

We first consider whether the term "debt relief agency" includes attorneys. If it does not, we need not reach the other questions presented, as §§526 and 528 govern only the conduct of debt relief agencies, and Milavetz challenges the validity of those provisions based on their application to attorneys. The Government contends that "debt relief agency" plainly includes attorneys, while Milavetz urges that it does not. We conclude that the Government has the better view.

As already noted, a debt relief agency is "any person who provides any bankruptcy assistance to an assisted person" in return for payment. §101(12A). By definition, "bankruptcy assistance" includes several services com-

---

[2] Compare 541 F. 3d 785, 794 (CA8 2008) (case below), with *Hersh* v. *United States ex rel. Mukasey*, 553 F. 3d 743, 761, 764 (CA5 2008) (holding that §526(a)(4) can be narrowly construed to prohibit only advice to abuse or manipulate the bankruptcy system and that, so construed, it is constitutional).

monly performed by attorneys. Indeed, some forms of
bankruptcy assistance, including the "provi[sion of] legal
representation with respect to a case or proceeding,"
§101(4A), may be provided only by attorneys. See
§110(e)(2) (prohibiting bankruptcy petition preparers from
providing legal advice). Moreover, in enumerating specific
exceptions to the definition of debt relief agency, Congress
gave no indication that it intended to exclude attorneys.
See §§101(12A)(A)–(E). Thus, as the Government con-
tends, the statutory text clearly indicates that attorneys
are debt relief agencies when they provide qualifying
services to assisted persons.[3]

In advocating a narrower understanding of that term,
Milavetz relies heavily on the fact that §101(12A) does not
expressly include attorneys. That omission stands in
contrast, it argues, to the provision's explicit inclusion of
"bankruptcy petition preparer[s]"—a category of profes-
sionals that excludes attorneys and their staff, see
§110(a)(1). But Milavetz does not contend, nor could it
credibly, that only professionals expressly included in the
definition are debt relief agencies. On that reading, no
professional other than a bankruptcy petition preparer
would qualify—an implausible reading given that the
statute defines "debt relief agency" as "any person who

——————

[3] Although reliance on legislative history is unnecessary in light of
the statute's unambiguous language, we note the support that record
provides for the Government's reading. Statements in a Report of the
House Committee on the Judiciary regarding the Act's purpose indicate
concern with abusive practices undertaken by attorneys as well as
other bankruptcy professionals. See, *e.g.,* H. R. Rep. No. 109–31, pt. 1,
p. 5 (2005) (hereinafter H. R. Rep.). And the legislative record else-
where documents misconduct by attorneys. See, *e.g.,* Hearing on H. R.
3150 before the Subcommittee on Commercial and Administrative Law
of the House Committee on the Judiciary, 105th Cong., 2d Sess., pt. III,
p. 95 (1998) (hereinafter 1998 Hearings). (While the 1998 Hearings
preceded the BAPCPA's enactment by several years, they form part of
the record cited by the 2005 House Report. See H. R. Rep., at 7.)

provides any bankruptcy assistance to an assisted person . . . *or* who is a bankruptcy petition preparer." §101(12A) (emphasis added). The provision's silence regarding attorneys thus avails Milavetz little. Cf. *Heintz* v. *Jenkins*, 514 U. S. 291, 294 (1995) (holding that "debt collector" as used in the Fair Debt Collection Practices Act, 15 U. S. C. §1692a(6), includes attorneys notwithstanding the definition's lack of an express reference to lawyers or litigation).

Milavetz's other arguments for excluding attorneys similarly fail to persuade us to disregard the statute's plain language. Milavetz contends that 11 U. S. C. §526(d)(2)'s instruction that §§526, 527, and 528 should not "be deemed to limit or curtail" States' authority to "determine and enforce qualifications for the practice of law" counsels against reading "debt relief agency" to include attorneys, as the surest way to protect the States' role in regulating the legal profession is to make the BAPCPA's professional conduct rules inapplicable to lawyers. We find that §526(d)(2) supports the opposite conclusion, as Congress would have had no reason to enact that provision if the debt-relief-agency provisions did not apply to attorneys. Milavetz's broader claim that reading §101(12A) to include attorneys impermissibly trenches on an area of traditional state regulation also lacks merit. Congress and the bankruptcy courts have long overseen aspects of attorney conduct in this area of substantial federal concern. See, *e.g., Conrad, Rubin & Lesser* v. *Pender*, 289 U. S. 472, 477–479 (1933) (finding broad authorization in former §96(d) (1934 ed.) (repealed 1978) for courts to examine the reasonableness of a debtor's prepetition attorney's fees).

Milavetz next argues that §101(12A)'s exception for any "officer, director, employee, or agent of a person who provides" bankruptcy assistance is revealing for its failure to include "partners." §101(12A)(A). In light of that omission, it contends, treating attorneys as debt relief agencies

will obligate entire law firms to comply with §§526, 527, and 528 based on the conduct of a single partner, while the agents and employees of debt relief agencies not typically organized as partnerships are shielded from those requirements. Given that the partnership structure is not unique to law firms, however, it is unclear why the exclusion would be revealing of Congress' intent only with respect to attorneys. In any event, partnerships are themselves "person[s]" under the BAPCPA, see §101(41), and can qualify as "debt relief agenc[ies]" when they meet the criteria set forth in §101(12A). Moreover, a partnership's employees and agents are exempted from §101(12A) in the same way as the employees and agents of other organizations. To the extent that partners may be subject to the debt-relief-agency provisions by association, that result is consistent with the joint responsibilities that typically flow from the partnership structure, cf. *Strang* v. *Bradner*, 114 U. S. 555, 561 (1885). Accordingly, we decline to attribute the significance Milavetz suggests to §101(12A)(A)'s failure to include partners among the exempted actors.[4]

All else failing, Milavetz urges that the canon of constitutional avoidance requires us to read "debt relief agency"

---

[4] Reviving an argument that Milavetz abandoned, *amici* contend that §527(b) undermines the Government's reading of §101(12A) because it requires a debt relief agency to inform an assisted person of his right to hire an attorney, and it would be nonsensical to require attorneys to provide such notice. See Brief for National Association of Consumer Bankruptcy Attorneys et al. as *Amici Curiae* 34. This argument fails on its own terms. Even if §101(12A) excluded attorneys, as Milavetz contends, §527(b) would still produce the result of which its *amici* complain, as that provision also requires a debt relief agency to inform assisted persons that they "'can get help in some localities from a bankruptcy petition preparer,'" and there is no question that bankruptcy petition preparers are debt relief agencies and thus subject to that requirement. It is in any event not absurd to require debt relief agencies—whether attorneys or bankruptcy petition preparers—to inform prospective clients of their options for obtaining bankruptcy-assistance services.

to exclude attorneys in order to forestall serious doubts as to the validity of §§526 and 528. The avoidance canon, however, "is a tool for choosing between competing plausible interpretations of a statutory text." *Clark* v. *Martinez*, 543 U. S. 371, 381 (2005). In applying that tool, we will consider only those constructions of a statute that are "'fairly possible.'" *United States* v. *Security Industrial Bank*, 459 U. S. 70, 78 (1982). For the reasons already discussed, the text and statutory context of §101(12A) foreclose a reading of "debt relief agency" that excludes attorneys. Accordingly, we hold that attorneys who provide bankruptcy assistance to assisted persons are debt relief agencies within the meaning of the BAPCPA.

B

Having concluded that attorneys are debt relief agencies when they provide qualifying services, we next address the scope and validity of §526(a)(4). Characterizing the statute as a broad, content-based restriction on attorney-client communications that is not adequately tailored to constrain only speech the Government has a substantial interest in restricting, the Eighth Circuit found the rule substantially overbroad. 541 F. 3d, at 793–794, and n. 10. For the reasons that follow, we reject that conclusion.

Section 526(a)(4) prohibits a debt relief agency from "advis[ing] an assisted person" either "to incur more debt in contemplation of" filing for bankruptcy "or to pay an attorney or bankruptcy petition preparer fee or charge for services" performed in preparation for filing. Only the first of these prohibitions is at issue. In debating the correctness of the Court of Appeals' decision, the parties first dispute the provision's scope. The Court of Appeals concluded that "§526(a)(4) broadly prohibits a debt relief agency from advising an assisted person . . . to incur *any* additional debt when the assisted person is contemplating bankruptcy." *Id.*, at 793. Under that reading, an attorney

is prohibited from providing all manner of "beneficial advice—even if the advice could help the assisted person avoid filing for bankruptcy altogether." *Ibid.*

Agreeing with the Court of Appeals, Milavetz contends that §526(a)(4) prohibits a debt relief agency from advising a client to incur any new debt while considering whether to file for bankruptcy. Construing the provision more broadly still, Milavetz contends that §526(a)(4) forbids not only affirmative advice but also any discussion of the advantages, disadvantages, or legality of incurring more debt. Like the panel majority's, Milavetz's reading rests primarily on its view that the ordinary meaning of the phrase "in contemplation of" bankruptcy encompasses any advice given to a debtor with the awareness that he might soon file for bankruptcy, even if the advice seeks to obviate the need to file. Milavetz also maintains that if §526(a)(4) were construed more narrowly, as urged by the Government and the dissent below, it would be so vague as to inevitably chill some protected speech.

The Government continues to advocate a narrower construction of the statute, urging that Milavetz's reading is untenable and that its vagueness concerns are misplaced. The Government contends that §526(a)(4)'s restriction on advice to incur more debt "in contemplation of" bankruptcy is most naturally read to forbid only advice to undertake actions to abuse the bankruptcy system. Focusing first on the provision's text, the Government points to sources indicating that the phrase "in contemplation of" bankruptcy has long been, and continues to be, associated with abusive conduct. For instance, Black's Law Dictionary 336 (8th ed. 2004) (hereinafter Black's) defines "contemplation of bankruptcy" as "[t]he thought of declaring bankruptcy because of the inability to continue current financial operations, often coupled with action designed to thwart the distribution of assets in a bankruptcy proceeding." Use of the phrase by Members of Congress illus-

trates that traditional coupling. See, *e.g.*, S. Rep. No. 98–65, p. 9 (1983) (discussing the practice of "'loading up' [on debt] in contemplation of bankruptcy"); Report of the Commission on the Bankruptcy Laws of the United States, H. R. Doc. No. 93–137, pt. I, p. 11 (1973) ("[T]he most serious abuse of consumer bankruptcy is the number of instances in which individuals have purchased a sizable quantity of goods and services on credit on the eve of bankruptcy in contemplation of obtaining a discharge"). The Government also points to early American and English judicial decisions to corroborate its contention that "in contemplation of" bankruptcy signifies abusive conduct. See, *e.g., In re Pearce*, 19 F. Cas. 50, 53 (No. 10,873) (D. Vt. 1843); *Morgan* v. *Brundrett*, 5 B. Ad. 288, 296–297, 110 Eng. Rep. 798, 801 (K. B. 1833) (Parke, J.).

To bolster its textual claim, the Government relies on §526(a)(4)'s immediate context. According to the Government, the other three subsections of §526(a) are designed to protect debtors from abusive practices by debt relief agencies: §526(a)(1) requires debt relief agencies to perform all promised services; §526(a)(2) prohibits them from making or advising debtors to make false or misleading statements in bankruptcy; and §526(a)(3) prohibits them from misleading debtors regarding the costs or benefits of bankruptcy. When §526(a)(4) is read in context of these debtor-protective provisions, the Government argues, construing it to prevent debt relief agencies from giving advice that is beneficial to both debtors and their creditors seems particularly nonsensical.

Finally, the Government contends that the BAPCPA's remedies for violations of §526(a)(4) similarly corroborate its narrow reading. Section 526(c) provides remedies for a debt relief agency's violation of §526, §527, or §528. Among the actions authorized, a debtor may sue the attorney for remittal of fees, actual damages, and reasonable attorney's fees and costs; a state attorney general may sue

for a resident's actual damages; and a court finding inten-
tional abuse may impose an appropriate civil penalty.
§526(c). The Government also relies on the Fifth Circuit's
decision in *Hersh* v. *United States ex rel. Mukasey*, 553
F. 3d 743 (2008), and Judge Colloton's dissent below for
the observation that "Congress's emphasis on actual dam-
ages for violations of section 526(a)(4) strongly suggests
that Congress viewed that section as aimed at advice to
debtors which if followed would have a significant risk of
harming the debtor." *Id.*, at 760; see 541 F. 3d, at 800
(opinion concurring in part and dissenting in part). By
contrast, "legal and appropriate advice that would be
protected by the First Amendment, yet prohibited by a
broad reading of §526(a)(4), should cause no damage at
all." *Ibid.;* see *Hersh*, 541 F. 3d, at 760.

Milavetz contends that the Government's sources actu-
ally undermine its claim that the phrase "in contemplation
of" bankruptcy necessarily refers to abusive conduct.
Specifically, Milavetz argues that these authorities illus-
trate that "in contemplation of" bankruptcy is a neutral
phrase that only implies abusive conduct when attached to
an additional, proscriptive term. As Black's states, the
phrase is "*often coupled with* action designed to thwart the
distribution of assets" in bankruptcy, Black's 336 (empha-
sis added), but it carries no independent connotation of
abuse. In support of that conclusion, Milavetz relies on
our decision in *Pender*, 289 U. S. 472, contending that we
construed "in contemplation of" bankruptcy in that case to
describe "conduct with a view to a probable bankruptcy
filing and nothing more." Brief for Milavetz 61.

After reviewing these competing claims, we are per-
suaded that a narrower reading of §526(a)(4) is sounder,
although we do not adopt precisely the view the Govern-
ment advocates. The Government's sources show that the
phrase "in contemplation of" bankruptcy has so commonly
been associated with abusive conduct that it may readily

be understood to prefigure abuse. As used in §526(a)(4), however, we think the phrase refers to a specific type of misconduct designed to manipulate the protections of the bankruptcy system. In light of our decision in *Pender*, and in context of other sections of the Code, we conclude that §526(a)(4) prohibits a debt relief agency only from advising a debtor to incur more debt because the debtor is filing for bankruptcy, rather than for a valid purpose.

*Pender* addressed the meaning of former §96(d), which authorized reexamination of a debtor's payment of attorney's fees "in contemplation of the filing of a petition." Recognizing "'the temptation of a failing debtor to deal too liberally with his property in enabling counsel to protect him,'" 289 U. S., at 478 (quoting *In re Wood & Henderson*, 210 U. S. 246, 253 (1908)), we read "in contemplation of . . . filing" in that context to require that the portended bankruptcy have "induce[d]" the transfer at issue, 289 U. S., at 477, understanding inducement to engender suspicion of abuse. In so construing the statute, we identified the "controlling question" as "whether the thought of bankruptcy was the impelling cause of the transaction." *Ibid.* Given the substantial similarities between §§96(d) and 526(a)(4), we think the controlling question under the latter provision is likewise whether the impelling reason for "advis[ing] an assisted person . . . to incur more debt" was the prospect of filing for bankruptcy.

To be sure, there are relevant differences between the provision at issue in *Pender* and the one now under review. Most notably, the inquiry in *Pender* was as to payments made on the eve of bankruptcy, whereas §526(a)(4) regards advice to incur additional debts. Consistent with that difference, under §96(d) a finding that a payment was made "in contemplation of" filing resolved only a threshold inquiry triggering further review of the reasonableness of the payment; the finding thus supported an inference of abuse but did not conclusively establish it. By contrast,

advice to incur more debt because of bankruptcy, as pro-
hibited by §526(a)(4), will generally consist of advice to
"load up" on debt with the expectation of obtaining its
discharge—*i.e.*, conduct that is abusive *per se*.

The statutory context supports the conclusion that
§526(a)(4)'s prohibition primarily targets this type of
abuse. Code provisions predating the BAPCPA already
sought to prevent the practice of loading up on debt prior
to filing. Section 523(a)(2), for instance, addressed the
attendant risk of manipulation by preventing the dis-
charge of debts obtained by false pretenses and making
debts for purchases of luxury goods or services presump-
tively nondischargeable. See §§523(a)(2)(A) and (C) (2000
ed.). The BAPCPA increased the risk of such abuse, how-
ever, by providing a new mechanism for determining a
debtor's ability to repay. Pursuant to the "means tes[t],"
§707(b)(2)(D) (2006 ed.), a debtor's petition for Chapter 7
relief is presumed abusive (and may therefore be dis-
missed or converted to a structured repayment plan under
Chapter 13) if the debtor's current monthly income ex-
ceeds his statutorily allowed expenses, including pay-
ments for secured debt, by more than a prescribed
amount. See §§707(b)(2)(A)(i)–(iv). The test promotes
debtor accountability but also enhances incentives to incur
additional debt prior to filing, as payments on secured
debts offset a debtor's monthly income under the formula.
Other amendments effected by the BAPCPA reflect a
concern with this practice. For instance, Congress
amended §523(a)(2) to expand the exceptions to discharge
by lowering the threshold amount of new debt a debtor
must assume to trigger the presumption of abuse under
§523(a)(2)(C), and it extended the relevant prefiling win-
dow. See §310, 119 Stat. 84. In context, §526(a)(4) is best
understood to provide an additional safeguard against the
practice of loading up on debt prior to filing.

The Government's contextual arguments provide addi-

tional support for the view that §526(a)(4) was meant to prevent this type of conduct. The companion rules of professional conduct in §§526(a)(1)–(3) and the remedies for their violation in §526(c) indicate that Congress was concerned with actions that threaten to harm debtors or creditors. Unlike the reasonable financial advice the Eighth Circuit's broad reading would proscribe, advice to incur more debt because of bankruptcy presents a substantial risk of injury to both debtors and creditors. See *Hersh*, 553 F. 3d, at 760–761. Specifically, the incurrence of such debt stands to harm a debtor if his prepetition conduct leads a court to hold his debts nondischargable, see §523(a)(2), convert his case to another chapter, or dismiss it altogether, see §707(b), thereby defeating his effort to obtain bankruptcy relief. If a debt, although manipulatively incurred, is not timely identified as abusive and therefore is discharged, creditors will suffer harm as a result of the discharge and the consequent dilution of the bankruptcy estate. By contrast, the prudent advice that the Eighth Circuit's view of the statute forbids would likely benefit both debtors and creditors and at the very least should cause no harm. See *id.*, at 760; 541 F. 3d, at 800 (Colloton, J., concurring in part and dissenting in part). For all of these reasons, we conclude that §526(a)(4) prohibits a debt relief agency only from advising an assisted person to incur more debt when the impelling reason for the advice is the anticipation of bankruptcy.

That "[n]o other solution yields as sensible a" result further persuades us of the correctness of this narrow reading. *United States* v. *Granderson*, 511 U. S. 39, 55 (1994). It would make scant sense to prevent attorneys and other debt relief agencies from advising individuals thinking of filing for bankruptcy about options that would be beneficial to both those individuals and their creditors. That construction serves none of the purposes of the Bankruptcy Code or the amendments enacted through the

BAPCPA. Milavetz itself acknowledges that its expansive
view of §526(a)(4) would produce absurd results; that is
one of its bases for arguing that "debt relief agency" should
be construed to exclude attorneys. Because the language
and context of §526(a)(4) evidence a more targeted pur-
pose, we can avoid the absurdity of which Milavetz com-
plains without reaching the result it advocates.

For the same reason, we reject Milavetz's suggestion
that §526(a)(4) broadly prohibits debt relief agencies from
discussing covered subjects instead of merely proscribing
affirmative advice to undertake a particular action. Sec-
tion 526(a)(4) by its terms prevents debt relief agencies
only from "advis[ing]" assisted persons "to incur" more
debt. Covered professionals remain free to "tal[k] fully
and candidly *about* the incurrence of debt in contempla-
tion of filing a bankruptcy case." Brief for Milavetz 73.
Section 526(a)(4) requires professionals only to avoid
instructing or encouraging assisted persons to take on
more debt in that circumstance. Cf. ABA Model Rule of
Professional Conduct 1.2(d) (2009) ("A lawyer shall not
counsel a client to engage, or assist a client, in conduct
that the lawyer knows is criminal or fraudulent, but a
lawyer may discuss the legal consequences of any pro-
posed course of conduct with a client and may counsel or
assist a client to make a good faith effort to determine the
validity, scope, meaning or application of the law"). Even
if the statute were not clear in this regard, we would reach
the same conclusion about its scope because the inhibition
of frank discussion serves no conceivable purpose within
the statutory scheme. Cf. *Johnson* v. *United States*, 529
U. S. 694, 706, n. 9 (2000).[5]

—————

[5] If read as Milavetz advocates, §526(a)(4) would seriously undermine
the attorney-client relationship. Earlier this Term, we acknowledged
the importance of the attorney-client privilege as a means of protecting
that relationship and fostering robust discussion. See *Mohawk Indus-
tries, Inc.* v. *Carpenter*, 558 U. S. ___, ___ (2009) (slip op., at 7). Reiter-

Finally, we reject Milavetz's contention that, narrowly construed, §526(a)(4) is impermissibly vague. Milavetz urges that the concept of abusive prefiling conduct is too indefinite to withstand constitutional scrutiny and that uncertainty regarding the scope of the prohibition will chill protected speech. We disagree.

Under our reading of the statute, of course, the prohibited advice is not defined in terms of abusive prefiling conduct but rather the incurrence of additional debt when the impelling reason is the anticipation of bankruptcy. Even if the test depended upon the notion of abuse, however, Milavetz's claim would be fatally undermined by other provisions of the Bankruptcy Code, to which that concept is no stranger. As discussed above, the Code authorizes a bankruptcy court to decline to discharge fraudulent debts, see §523(a)(2), or to dismiss a case or convert it to a case under another chapter if it finds that granting relief would constitute abuse, see §707(b)(1). Attorneys and other professionals who give debtors bankruptcy advice must know of these provisions and their consequences for a debtor who in bad faith incurs additional debt prior to filing. Indeed, §707(b)(4)(C) states that an attorney's signature on bankruptcy filings "shall constitute a certification that the attorney has" determined that the filing "does not constitute an abuse under [§707(b)(1)]." Against this backdrop, it is hard to see how a rule that narrowly prohibits an attorney from affirmatively advising a client to commit this type of abusive prefiling conduct could chill attorney speech or inhibit the attorney-client relationship. Our construction of §526(a)(4) to prevent only advice principally motivated by the prospect of bank-

---

ating the significance of such dialogue, we note that §526(a)(4), as narrowly construed, presents no impediment to "'full and frank'" discussions. *Ibid.* (quoting *Upjohn Co.* v. *United States*, 449 U. S. 383, 389 (1981)).

ruptcy further ensures that professionals cannot unknow-ingly run afoul of its proscription.[6]  Because the scope of the prohibition is adequately defined, both on its own terms and by reference to the Code's other provisions, we reject Milavetz's vagueness claim.

As the foregoing shows, the language of the statute, together with other evidence of its purpose, makes this narrow reading of §526(a)(4) not merely a plausible inter-pretation but the more natural one.  Accordingly, we reject the Eighth Circuit's conclusion and hold that a debt relief agency violates §526(a)(4) only when the impetus of the advice to incur more debt is the expectation of filing for bankruptcy and obtaining the attendant relief.  Because our reading of the statute supplies a sufficient ground for reversing the Court of Appeals' decision, and because Milavetz challenges the constitutionality of the statute, as narrowed, only on vagueness grounds, we need not further consider whether the statute so construed withstands First Amendment scrutiny.

C

Finally, we address the validity of §528's challenged disclosure requirements.  Our first task in resolving this

_____

[6] The hypothetical questions Milavetz posits regarding the permissi-bility of advice to incur debt in certain circumstances, see Brief for Milavetz 48–51, are easily answered by reference to whether the expectation of filing for bankruptcy (and obtaining a discharge) im-pelled the advice.  We emphasize that awareness of the possibility of bankruptcy is insufficient to trigger §526(a)(4)'s prohibition.  Instead, that provision proscribes only advice to incur more debt that is princi-pally motivated by that likelihood.  Thus, advice to refinance a mort-gage or purchase a reliable car prior to filing because doing so will reduce the debtor's interest rates or improve his ability to repay is not prohibited, as the promise of enhanced financial prospects, rather than the anticipated filing, is the impelling cause.  Advice to incur additional debt to buy groceries, pay medical bills, or make other purchases "reasonably necessary for the support or maintenance of the debtor or a dependent of the debtor," §523(a)(2)(C)(ii)(II), is similarly permissible.

question is to determine the contours of Milavetz's claim. Although the nature of its challenge is not entirely clear from the briefing or decisions below, counsel for Milavetz insisted at oral argument that this is "not a facial challenge; it's an as-applied challenge." Tr. of Oral Arg. 26. We will approach the question consistent with Milavetz's characterization.[7]

We next consider the standard of scrutiny applicable to §528's disclosure requirements. The parties agree, as do we, that the challenged provisions regulate only commercial speech. Milavetz contends that our decision in *Central Hudson Gas & Elec. Corp.* v. *Public Serv. Comm'n of N. Y.*, 447 U. S. 557 (1980), supplies the proper standard for reviewing these requirements. The Court in that case held that restrictions on nonmisleading commercial speech regarding lawful activity must withstand intermediate scrutiny—that is, they must "directly advanc[e]" a substantial governmental interest and be "n[o] more extensive than is necessary to serve that interest." *Id.*, at 566. Contesting Milavetz's premise, the Government maintains that §528 is directed at *misleading* commercial speech. For that reason, and because the challenged provisions impose a disclosure requirement rather than an affirmative limitation on speech, the Government contends that the less exacting scrutiny described in *Zauderer* governs our review. We agree.

*Zauderer* addressed the validity of a rule of professional conduct that required attorneys who advertised contingency-fee services to disclose in their advertisements that a losing client might still be responsible for certain litiga-

—————

[7] In so doing, we note that our ability to evaluate §528's validity as applied to Milavetz is constrained by the lack of a developed record. Because the parties have introduced no exhibits or other evidence to ground our analysis, we are guided in this preenforcement challenge only by Milavetz's status—*i.e.*, as a law firm or attorney—and its general claims about the nature of its advertisements.

tion fees and costs. Noting that First Amendment protec-
tion for commercial speech is justified in large part by the
information's value to consumers, the Court concluded
that an attorney's constitutionally protected interest in *not*
providing the required factual information is "minimal."
471 U. S., at 651. Unjustified or unduly burdensome
disclosure requirements offend the First Amendment by
chilling protected speech, but "an advertiser's rights are
adequately protected as long as disclosure requirements
are reasonably related to the State's interest in preventing
deception of consumers." *Ibid.*

The challenged provisions of §528 share the essential
features of the rule at issue in *Zauderer*. As in that case,
§528's required disclosures are intended to combat the
problem of inherently misleading commercial advertise-
ments—specifically, the promise of debt relief without any
reference to the possibility of filing for bankruptcy, which
has inherent costs. Additionally, the disclosures entail
only an accurate statement identifying the advertiser's
legal status and the character of the assistance provided,
and they do not prevent debt relief agencies like Milavetz
from conveying any additional information.

The same characteristics of §528 that make it analogous
to the rule in *Zauderer* serve to distinguish it from those
at issue in *In re R. M. J.*, 455 U. S. 191 (1982), to which
the Court applied the intermediate scrutiny of *Central
Hudson*. The ethical rules addressed in *R. M. J.* prohib-
ited attorneys from advertising their practice areas in
terms other than those prescribed by the State Supreme
Court and from announcing the courts in which they were
admitted to practice. See 455 U. S., at 197–198. Finding
that the restricted statements were not inherently mis-
leading and that the State had failed to show that the
appellant's advertisements were themselves likely to
mislead consumers, see *id.*, at 205, the Court applied
*Central Hudson*'s intermediate scrutiny and invalidated

the restrictions as insufficiently tailored to any substantial state interest, 455 U. S., at 205–206. In so holding, the Court emphasized that States retain authority to regulate inherently misleading advertisements, particularly through disclosure requirements, and it noted that advertisements for professional services pose a special risk of deception. See *id.*, at 203, 207.

Milavetz makes much of the fact that the Government in these consolidated cases has adduced no evidence that its advertisements are misleading. *Zauderer* forecloses that argument: "When the possibility of deception is as self-evident as it is in this case, we need not require the State to 'conduct a survey of the . . . public before it [may] determine that the [advertisement] had a tendency to mislead.'" 471 U. S., at 652–653 (quoting *FTC* v. *Colgate-Palmolive Co.*, 380 U. S. 374, 391–392 (1965)). Evidence in the congressional record demonstrating a pattern of advertisements that hold out the promise of debt relief without alerting consumers to its potential cost, see 1998 Hearings, pt. III, at 86, 90–94, is adequate to establish that the likelihood of deception in this case "is hardly a speculative one," 471 U. S., at 652.

Milavetz alternatively argues that the term "debt relief agency" is confusing and misleading and that requiring its inclusion in advertisements cannot be "reasonably related" to the Government's interest in preventing consumer deception, as *Zauderer* requires. *Id.*, at 651. This contention amounts to little more than a preference on Milavetz's part for referring to itself as something other than a "debt relief agency"—*e.g.*, an attorney or a law firm. For several reasons, we conclude that this preference lacks any constitutional basis. First, Milavetz offers no evidence to support its claim that the label is confusing. Because §528 by its terms applies only to debt relief agencies, the disclosures are necessarily accurate to that extent: Only debt relief agencies must identify themselves as such in their

advertisements. This statement provides interested observers with pertinent information about the advertiser's services and client obligations.

Other information that Milavetz must or may include in its advertisements for bankruptcy-assistance services provides additional assurance that consumers will not misunderstand the term. The required statement that the advertiser "'help[s] people file for bankruptcy relief'" gives meaningful context to the term "debt relief agency." And Milavetz may further identify itself as a law firm or attorney. Section 528 also gives Milavetz flexibility to tailor the disclosures to its individual circumstances, as long as the resulting statements are "substantially similar" to the statutory examples. §§528(a)(4) and (b)(2)(B).

Finally, we reject Milavetz's argument that §528 is not reasonably related to any governmental interest because it applies equally to attorneys who represent creditors, as Milavetz sometimes does. The required disclosures, Milavetz contends, would be counterfactual and misleading in that context. This claim is premised on an untenable reading of the statute. We think it evident from the definition of "assisted person"—which is stated in terms of the person's debts, see §101(3)—and from the text and structure of the debt-relief-agency provisions in §§526, 527, and 528 that those provisions, including §528's disclosure requirements, govern only professionals who offer bankruptcy-related services to consumer debtors. Section 528 is itself expressly concerned with advertisements pertaining to "bankruptcy assistance services," "the benefits of bankruptcy," "excessive debt, debt collection pressure, or inability to pay any consumer debt," §§528(a)(3) and (b)(2). Moreover, like the other debt-relief-agency provisions, that section is codified in a subchapter of the Bankruptcy Code entitled "DEBTOR'S DUTIES AND BENEFITS." 11 U. S. C., ch. 5, subch. II. In context, reading §528 to govern advertisements aimed at creditors would be as anoma-

lous as the result of which Milavetz complains. Once again, we decline Milavetz's invitation to adopt a view of the statute that is contrary to its plain meaning and would produce an absurd result.

Because §528's requirements that Milavetz identify itself as a debt relief agency and include certain information about its bankruptcy-assistance and related services are "reasonably related to the [Government's] interest in preventing deception of consumers," *Zauderer*, 471 U. S., at 651, we uphold those provisions as applied to Milavetz.

## IV

For the foregoing reasons, the judgment of the Court of Appeals for the Eighth Circuit is affirmed as to §§101(12A) and 528 and reversed as to §526(a)(4), and the cases are remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

-------------------------

Nos. 08–1119 and 08–1225

-------------------------

MILAVETZ, GALLOP & MILAVETZ, P. A., ET AL.,
PETITIONERS
08–1119                    *v.*
UNITED STATES


UNITED STATES, PETITIONER
08–1225                    *v.*
MILAVETZ, GALLOP & MILAVETZ, P. A., ET AL.

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT

[March 8, 2010]

JUSTICE SCALIA, concurring in part and concurring in the judgment.

I join the opinion of the Court, except for footnote 3, which notes that the legislative history supports what the statute unambiguously says. The Court first notes that statements in the Report of the House Committee on the Judiciary "indicate concern with abusive practices undertaken by attorneys." *Ante*, at 6, n. 3. Perhaps, but only the concern of the author of the Report. Such statements tell us nothing about what the statute means, since (1) we do not know that the members of the Committee read the Report, (2) it is almost certain that they did not vote on the Report (that is not the practice), and (3) even if they did read and vote on it, they were not, after all, those who made this law. The statute before us is a law because its text was approved by a majority vote of the House and the Senate, and was signed by the President. Even indulging the extravagant assumption that Members of the House

other than members of its Committee on the Judiciary read the Report (and the further extravagant assumption that they agreed with it), the Members of the Senate could not possibly have read it, since it did not exist when the Senate passed the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. And the President surely had more important things to do.

The footnote's other source of legislative history is truly mystifying. For the proposition that "the legislative record elsewhere documents misconduct by attorneys" which was presumably the concern of *Congress*, the Court cites a reproduction of a tasteless advertisement that was (1) an attachment to the written statement of a *witness*, (2) in a hearing held seven years prior to this statute's passage, (3) before a subcommittee of the House considering a *different* consumer bankruptcy reform bill that never passed.* "Elsewhere" indeed.

The Court acknowledges that nothing can be gained by this superfluous citation (it admits the footnote is "unnecessary in light of the statute's unambiguous language," *ante*, at 6, n. 3). But much can be lost. Our cases have said that legislative history is irrelevant when the statutory text is clear. See, *e.g., United States* v. *Gonzales*, 520 U. S. 1, 6 (1997); *Connecticut Nat. Bank* v. *Germain*, 503 U. S. 249, 254 (1992). The footnote advises conscientious attorneys that this is not true, and that they must spend time and their clients' treasure combing the annals of legislative history in *all* cases: To buttress their case

——————

*The Court protests that the earlier hearing was "part of the record cited by the 2005 House Report," *ante*, at 6, n. 3. The page it cites, however, does nothing more than note that the earlier hearing took place, see H. R. Rep. No. 109–31, pt. 1, p. 7 (2005). Are we to believe that this brought to the attention of the committee (much less of the whole Congress) an attachment to the testimony of one of the witnesses at that long-ago hearing? Of course not. That legislative history shows what "Congress" intended is a fiction requiring no support in reality.

where the statutory text is unambiguously in their favor; and to attack an unambiguous text that is against them. If legislative history is relevant to confirm that a clear text means what it says, it is presumably relevant to show that an apparently clear text does not mean what it seems to say. Even for those who believe in the legal fiction that committee reports reflect congressional intent, footnote 3 is a bridge too far.

# SUPREME COURT OF THE UNITED STATES

_____

Nos. 08–1119 and 08–1225

_____

MILAVETZ, GALLOP & MILAVETZ, P. A., ET AL.,
PETITIONERS
08–1119          *v.*
UNITED STATES


UNITED STATES, PETITIONER
08–1225          *v.*
MILAVETZ, GALLOP & MILAVETZ, P. A., ET AL.

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT

[March 8, 2010]

JUSTICE THOMAS, concurring in part and concurring in the judgment.

I concur in the judgment and join all but Part III–C of the Court's opinion. I agree with the Court that 11 U. S. C. §528's advertising disclosure requirements survive First Amendment scrutiny on the record before us. I write separately because different reasons lead me to that conclusion.

I have never been persuaded that there is any basis in the First Amendment for the relaxed scrutiny this Court applies to laws that suppress nonmisleading commercial speech. See *44 Liquormart, Inc.* v. *Rhode Island*, 517 U. S. 484, 522–523 (1996) (opinion concurring in part and concurring in judgment) (discussing *Central Hudson Gas & Elec. Corp.* v. *Public Serv. Comm'n of N. Y.*, 447 U. S. 557 (1980)). In this case, the Court applies a still lower standard of scrutiny to review a law that compels the disclosure of commercial speech—*i.e.*, the rule articulated in

*Zauderer* v. *Office of Disciplinary Counsel of Supreme
Court of Ohio*, 471 U. S. 626 (1985), that laws that require
the disclosure of factual information in commercial adver-
tising may be upheld so long as they are "reasonably
related" to the government's interest in preventing con-
sumer deception, *id.*, at 651.

I am skeptical of the premise on which *Zauderer* rests—
that, in the commercial-speech context, "the First Amend-
ment interests implicated by disclosure requirements are
substantially weaker than those at stake when speech is
actually suppressed," *id.,* at 652, n. 14; see *id.*, at 650
(citing "material differences between disclosure require-
ments and outright prohibitions on speech"). We have
refused in other contexts to attach any "constitutional
significance" to the difference between regulations that
compel protected speech and regulations that restrict it.
See, *e.g.*, *Riley* v. *National Federation of Blind of N. C.,
Inc.*, 487 U. S. 781, 796–797 (1988). I see no reason why
that difference should acquire constitutional significance
merely because the regulations at issue involve commer-
cial speech. See *Glickman* v. *Wileman Brothers & Elliott,
Inc.*, 521 U. S. 457, 480–481 (1997) (Souter, J., dissenting)
(arguing that "commercial speech is . . . subject to [this]
First Amendment principle: that compelling cognizable
speech officially is just as suspect as suppressing it, and is
typically subject to the same level of scrutiny"); *id.*, at 504
(THOMAS, J., dissenting); cf. *United States* v. *United Foods,
Inc.*, 533 U. S. 405, 419 (2001) (THOMAS, J., concurring)
(stating that regulations that compel funding for commer-
cial advertising "must be subjected to the most stringent
First Amendment scrutiny").

Accordingly, I would be willing to reexamine *Zauderer*
and its progeny in an appropriate case to determine
whether these precedents provide sufficient First Amend-
ment protection against government-mandated disclo-

sures.[1]  Because no party asks us to do so here, however, I agree with the Court that the *Zauderer* standard governs our review of the challenge to §528 brought by the Milavetz law firm and the other plaintiffs in this action (hereinafter Milavetz).

Yet even under *Zauderer*, we "have not presumptively endorsed" laws requiring the use of "government-scripted disclaimers" in commercial advertising.  See *Borgner* v. *Florida Bd. of Dentistry*, 537 U. S. 1080, 1082 (2002) (THOMAS, J., dissenting from denial of certiorari).  *Zauderer* upheld the imposition of sanctions against an attorney under a rule of professional conduct that required advertisements for contingency-fee services to disclose that losing clients might be responsible for litigation fees and costs.  See 471 U. S., at 650–653.  Importantly, however, Zauderer's advertisement was found to be misleading on its face, and the regulation in that case did not mandate the specific form or text of the disclosure.  *Ibid.*  Thus, *Zauderer* does not stand for the proposition that the government can constitutionally compel the use of a scripted disclaimer in any circumstance in which its interest in

_____

[1] I have no quarrel with the principle that advertisements that are false or misleading, or that propose an illegal transaction, may be proscribed.  See *44 Liquormart, Inc.* v. *Rhode Island*, 517 U. S. 484, 520 (1996) (opinion concurring in part and concurring in judgment). Furthermore, I acknowledge this Court's longstanding assumption that a consumer-fraud regulation that compels the disclosure of certain factual information in advertisements may intrude less significantly on First Amendment interests than an outright prohibition on all advertisements that have the potential to mislead.  See, *e.g.*, *Virginia Bd. of Pharmacy* v. *Virginia Citizens Consumer Council, Inc.*, 425 U. S. 748, 771–772 (1976); *Zauderer* v. *Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U. S. 626, 651–652, n. 14 (1985); *Riley* v. *National Federation of Blind of N. C., Inc.*, 487 U. S. 781, 796, n. 9 (1988); *Central Hudson Gas & Elec. Corp.* v. *Public Serv. Comm'n of N. Y.*, 447 U. S. 557, 565 (1980).  But even if that assumption is correct, I doubt that it justifies an entirely different standard of review for regulations that compel, rather than suppress, commercial speech.

preventing consumer deception might plausibly be at stake. In other words, a bare assertion by the government that a disclosure requirement is "intended" to prevent consumer deception, standing alone, is not sufficient to uphold the requirement as applied to all speech that falls within its sweep. See *ante*, at 20.

Instead, our precedents make clear that regulations aimed at false or misleading advertisements are permissible only where "the particular advertising is *inherently likely* to deceive or where the record indicates that a particular form or method of advertising has *in fact* been deceptive." *In re R. M. J.*, 455 U. S. 191, 202 (1982) (emphasis added); see *Zauderer, supra*, at 651 ("recogniz[ing] that unjustified or unduly burdensome disclosure requirements might offend the First Amendment"). Therefore, a disclosure requirement passes constitutional muster only to the extent that it is aimed at advertisements that, by their nature, possess these traits. See *R. M. J., supra*, at 202; *Ibanez* v. *Florida Dept. of Business and Professional Regulation, Bd. of Accountancy*, 512 U. S. 136, 143, 146–147 (1994).

I do not read the Court's opinion to hold otherwise. See *ante*, at 20. Accordingly, and with that understanding, I turn to the question whether Milavetz's challenge to §528's disclosure requirements survives *Zauderer* scrutiny on the record before us.

As the Court notes, the posture of Milavetz's challenge inhibits our review of its First Amendment claim. See *ante*, at 19, n. 7. Milavetz challenged §528's constitutionality before the statute had ever been enforced against any of the firm's advertisements. Although Milavetz purports to challenge §528 only "'as-applied'" to its own advertising, see *ante*, at 19, it did not introduce any evidence or exhibits to substantiate its claim. Thus, no court has seen a sampling of Milavetz's advertisements or even a declaration describing their contents and the media through

which Milavetz seeks to transmit them.  As a consequence, Milavetz's nominal "as applied" challenge appears strikingly similar to a facial challenge.

We generally disapprove of such challenges because they "often rest on speculation" and require courts to engage in "'premature interpretation of statutes on the basis of factually barebones records.'" *Washington State Grange* v. *Washington State Republican Party*, 552 U. S. 442, 450 (2008) (quoting *Sabri* v. *United States*, 541 U. S. 600, 609 (2004)).  Milavetz's claim invites the same problems.  Milavetz alleges that §528's disclosure requirements are unconstitutional as applied to its advertisements because its advertisements are not misleading and because the disclaimer required by §528 will create, rather than reduce, confusion for Milavetz's potential clients. That may well be true.  But because no record evidence of Milavetz's advertisements exists to guide our review, we can only speculate about the ways in which the statute might be applied to Milavetz's speech.

When forced to determine the constitutionality of a statute based solely on such conjecture, we will uphold the law if there is any "conceivabl[e]" manner in which it can be enforced consistent with the First Amendment.  *Washington State Grange*, *supra*, at 456.  In this case, both parties agree that §528's disclosure requirements cover, at a minimum, deceptive advertisements that promise to "'wipe out'" debts without mentioning bankruptcy as the means of accomplishing this goal.[2]  Brief for Milavetz 82,

_____

[2] At oral argument, Milavetz's counsel declined to describe Milavetz's challenge to §528 as a facial overbreadth claim, Tr. of Oral Arg. 25–26, and Milavetz's briefs make no such contention.  But even viewing Milavetz's argument as a claim that §528 is facially overbroad because it applies to nonmisleading advertisements for bankruptcy-related services, such an argument must fail.  First, as noted, Milavetz acknowledges that §528 can be constitutionally applied to deceptive bankruptcy-related advertisements and, thus, at least one "set of

86; Brief for United States 60–62. As a result, there is at least one set of facts on which the statute could be constitutionally applied. Thus, I agree with the Court that Milavetz's challenge to §528 must fail.

————————

circumstances exists under which [§528] would be valid." *United States* v. *Salerno*, 481 U. S. 739, 745 (1987). Second, Milavetz does not attempt to argue that §528's unconstitutional applications are "substantial" in number when judged in relation to this "plainly legitimate sweep." *Washington State Grange* v. *Washington State Republican Party*, 552 U. S. 442, 449–450, and n. 6 (2008) (internal quotation marks omitted).